UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                      ) | Criminal Action No.: 02-30043-MAP |
| ) | |
| ANDREY BUYNOVSKIY          ) | |

FILED
IN CLERK'S OFFICE

2006 MAR 17 P 3:08

U.S. DISTRICT COURT
DISTRICT OF MASS.

## MEMORANDUM IN SUPPORT OF MOTION FOR DOWNWARD DEPARTURE

### I. INTRODUCTION

On November 28, 2005, Andrey Buynovskiy pled guilty to 18 U.S.C. §371, §922(a) (1) (A)—"Conspiracy to Deal Firearms without a License". The Pre-Sentence Report prepared by the United States Probation office calculates Mr. Buynovskiy's Total Offense Level to be fifteen (15)—which provides for a sentence range between eighteen (18) and twenty-four (24) months. **See Presentence Report ¶¶ 13-23.** In reaching this figure, the United States Probation Office assigned a base offense level of twelve (12) under the appropriate statute and adds eight (8) levels based upon the specific offense characteristics, while subtracting five (5) levels for Mr. Buynovskiy's "role in the offense" and "acceptance of responsibility." **See Presentence Report ¶¶ 13.**

In imposing a sentence a court must always consider the purposes of sentencing which Congress set forth in 18 U.S.C. § 3553(a). Under that provision a court should consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing ranges; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentence disparities among

2

defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a).

In considering his sentence, Mr. Buynovskiy asserts that this court should utilize the following three (3) areas which appropriately reduce his sentence below the proposed guideline range. First, Mr. Buynovskiy's base offense level should be reduced by an additional two (2) levels—pursuant to §3B1.2—as he had minimal participation in the concerted activity. Second, there are mitigating circumstances not adequately taken into consideration by the U.S.S.G. pursuant to §5K2.0. Third, pursuant to the U.S.S.G §5H1.6, Mr. Buynovskiy's family ties and responsibilities are such that a downward departure is warranted.

## II. PURSUANT TO U.S.S.G. §3B1.2 ANDREY BUYNOVKSIY SHOULD BE AFFORDED AN ADDITIONAL TWO (2) LEVEL REDUCTION AS HE WAS A MINOR PARTICPANT IN THE CONCERTED ACTIVITY

Under U.S.S.G. §3B1.2, a defendant's base offense level may be decreased as a result of his role in the concerted activity which makes of the basis for the offense. Specifically, U.S.S.G. §3B1.2(a) allows for a four (4) level decrease if the defendant was a minimal participant. The First Circuit has stated that, "[t]o qualify as a minimal participant, a defendant must prove that he is among the least culpable of those involved in the criminal activity. In our view, this entails proof that he is substantially less culpable than his cohorts in the actual offense and that he is substantially less culpable than the vast majority of those taking part in similar crimes." United States v. Santos, 357 F.3d 136, 142 (1st Cir. 2004). See U.S.S.G. § 3B1.2, cmt. (nn.3(A), 4, 5). See also United States v. Kerr, 13 F.3d 203, 206 (7th Cir.1993) (refusing reduction for minimal participation where defendant did not prove that she was substantially less culpable than

3

the average participant in similar crimes); United States v. De La Cruz, 996 F.2d 1307, 1314 (1st Cir.1993) (giving as examples of a minimal participant "someone who played no other role in a very large smuggling operation than to offload part of a single marijuana shipment" or someone who "was recruited as a courier for a single smuggling operation involving a small amount of drugs") (quoting U.S.S.G. § 3B1.2 cmt. (n.2)). "In short, a defendant must be a plainly peripheral player to justify his classification as a minimal participant." Santos, 357 F.3d at 142.

In the following matter, Mr. Buynovskiy filed a Statement of Facts after his change of plea which detailed his involvement in the instant offense. **See Attached Exhibit "A"—Statement of Facts.** In that Statement of Facts Mr. Buynovskiy indicates that "he had no knowledge of the number of weapons Mr. Safanov was distributing or intending to distribute at the time [he] [] was directly involved." **See Attached Exhibit "A"—Statement of Facts.** Further, once Mr. Buynovskiy realized the nature and scope of Mr. Safanov's actions he distanced himself from his Alexei Safanov and the rest of his co-defendants and took no part in their future transactions. **See Attached Exhibit "A"—Statement of Facts.** It should be further noted that the United States Attorney's Office has no objection with Mr. Buynovskiy's version in his Statement of Facts.

Mr. Buynovskiy should receive an additional two (2) level reduction because he is "the least culpable of those involved in the criminal activity." Santos, 357 F.3d at 142. Mr. Buynovskiy's involvement in this offense primarily constituted making contact with Carlos Ortiz—the informant—and setting up two meetings so that Mr. Ortiz and Mr. Safanov could exchange money for firearms. **See Presentence Report ¶ 36-39.** Once it was apparent to Mr. Buynovskiy the nature and scope of Mr. Safanov's intentions he

distanced himself from his co-defendants and stopped taking part in their future transactions. As the Presentence Report indicates, Mr. Buynovskiy was only involved in two transactions—totaling four (4) firearms, out of the possible twenty-six (26) firearms involved in the entire conspiracy. **See Presentence Report ¶ 34.** Moreover, it should be noted that Mr. Buynovskiy had no knowledge of the future transactions which involved firearms with obliterated serial numbers. **See Attached Exhibit "A"—Statement of Facts.** This is supported by the Presentence Report, which indicates that the firearms attributable to Mr. Buynovskiy had serial numbers and the transactions where firearms without the serial numbers were exchanged came after Mr. Buynovskiy had distanced himself from his co-defendants. **See Presentence Report ¶ 34.**

It is clear that Mr. Buynovskiy was nothing more than a "peripheral player" in this matter and was the least culpable of his co-defendants. Santos, 357 F.3d at 142. As a result of Mr. Buynovskiy's "minimal" participation in the above-offense he should receive the appropriate four (4) level reduction under §3B1.2(a), instead of the proposed two (2) level reduction in the Presentence Report.

### III. PURSUANT TO U.S.S.G. §5K2.0 ANDREY BUYNOVSKIY SHOULD BE GRANTED A DOWNWARD DEPARTURE FOR HIS MITIGATING CIRCUMSTANCES

Mr. Buynovskiy is entitled to a downward departure because of the extreme difficulty in assimilating to the United States culture and society upon his move from the Soviet Union at the age of 10. Such difficulty was, and still is, brought on by the ostracism and exclusion that he has undergone in the community. **See Exhibit "B"— Letters in Support.** Such exclusion affected Mr. Buynovskiy's education, his social life, and most importantly, his psyche. **See Exhibit "C"—Report Cards for Andrey**

**Buynovskiy.** This type of situation was not contemplated by the Sentencing Commission when formulating appropriate areas for guideline departures and thus pursuant to §5K2.0 may be taken into account during sentencing and is an appropriate basis for departure.

The Supreme Court, in <u>Koon v. United States</u>, 518 U.S. 81(1996), opened the door for downward departure from the United States Sentencing Guidelines. The <u>Koon</u> Court emphasized allowing sentencing judges to weigh the facts and circumstances in each case and to mitigate or magnify the sentence as those facts and circumstances permit. 518 U.S. at 112. The Court noted that the Sentencing Guidelines allow the sentencing court to take into account individual circumstances that are aggravating or mitigating, not considered by the Sentencing Commission when formulating the guidelines. 18 U.S.C. §3553(b); <u>Koon</u>, 518 U.S. at 92. The Supreme Court recognizes that the District Courts must weigh these facts and circumstances to assess whether a particular case falls within the heartland of the applicable guidelines. <u>United States v. Williams</u>, 78 F. Supp. 2d 189 (S.D. N.Y. 1999); U.S.S.G. §4A1.3 (holding that the sentencing court may conclude that the defendant's criminal history was significantly less serious than that of most defendant's in the same criminal history category). A court may depart from the guidelines if it finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into account by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. U.S.S.G. § 5K2.0 (citing 18 U.S.C § 3553(b)) (1998). The Sentencing Commission has provided guidance in making departure decisions by listing certain factors that are "forbidden" bases for departure, "discouraged" bases for departure, and "encouraged" bases for departure. <u>Koon v. United States</u>, 518 U.S. 81,

93-95 (1996). The Supreme Court has adopted the following test for determining whether to depart: (1) What factors of the case make it special or unusual?; (2) Has the Commission forbidden departures based on those factors?; (3) If not, has the Commission encouraged departures based on those factors?; and (4) If not, has the Commission discouraged departures based on those factors? Id. at 95.

The Koon Court emphasized allowing sentencing judges to weigh the facts and circumstances in each case and to mitigate or magnify the sentence as those facts and circumstances permit. 518 U.S. at 112. The Koon Court noted that the U.S.S.G. provides the courts with a set of typical cases that embody the conduct that each guideline describes. Id. See also, United States v. Rivera, 994 F.2d 942, 947 (1993). A case that falls outside of the "heartland" case described by the Guidelines, due to its unusual features, is a candidate for departure. Id. The Guidelines advise the sentencing courts of what factors make a case atypical and take it out of the considered "heartland." United States v. Pereira, 272 F.3d 76 (1st Cir. 2001) (noting a defendant's irreplaceable care of a family member is a factor that takes a case out of the Sentencing Guidelines' heartland). If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the

7

Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland. Koon, 518 U.S. at 95-96.

Further, Congress has deferred to the Commission the role of deciding what constitutes a sufficient sentencing range in the typical case, consistent with these purposes. But that range contemplates only the typical cases, ones that fall within the so-called "heartland." See U.S.S.G. Manual Ch. 1 Pt. A at 6 (1998). If the circumstances of the case reveal that the purposes of sentencing have been fully or partially fulfilled prior to the imposition of sentence, a sentence within the range set forth by the guidelines may be "greater than necessary" to satisfy those purposes. 18 U.S.C. § 3553(a).

In this matter, Mr. Buynovskiy's feelings of exclusion, ostracism, and harassment substantially contributed to the commission of the instant offense and are not addressed by the U.S.S.G. **See Exhibit "B"—Letters in Support.** A report authored by Dr. Michael Sherry—after conducting a Psychological Evaluation on Mr. Buynovskiy—reveals that Andrey felt ostracized and excluded since he moved to the United States from the Soviet Union. **See Exhibit "D"—Report by Dr. Sherry; See Exhibit "B"—Letters in Support; and See Exhibit "C"—Report Cards for Andrey Buynovskiy.** Dr. Sherry reports that Andrey "found some of the American customs difficult to fathom and that he felt harassed and discriminated against because he was an immigrant." **See Exhibit "D"—Report by Dr. Sherry.** This harassment, coupled with his poor academic performance, led to Mr. Buynovskiy's eventual decision to drop out of school after the ninth (9th) grade. **See Exhibit "B"—Letters in Support; and See Exhibit "C"—Report Cards for Andrey Buynovskiy.**

8

These feelings of exclusion, ostracism, and harassment were further amplified by Mr. Buynovskiy's lack of comprehension of the English language. As noted earlier, Mr. Buynovskiy began his academic/scholastic carrier in the United States at Brookings Elementary School in Springfield. **See Presentence Report ¶ 92.** During this period much of his studies were translated into Russian for him. **See Presentence Report ¶ 92.** As time progressed, Mr. Buynovskiy's grasp of the English language did not improve. As you can see from Mr. Buynovskiy's report cards English was a struggle for him. **See Exhibit "C"—Report Cards for Andrey Buynovskiy.**

Obviously, this difficult period of time took its toll on his academic carrier. Another example of this struggle is evidenced in the fact that Mr. Buynovskiy had to take his driver's license test in his native language. Although Mr. Buynovskiy had been living in the United States for almost six (6) years this difficulty with the English language keep creating a problem in his life. **See Exhibit "B"—Letters in Support.**

Mr. Buynovskiy developed a mechanism to cope and function in society by "pretending" to understand the English language, when in fact, he did not comprehend much of what was being said. The complex thoughts and subtleties of the English language were beyond his grasp.

This report concludes with a "noteworthy" observation by Dr. Sherry. Dr. Sherry indicates that Andrey and his older brother (by two (2) years) are the only family members to have legal problems while living in the United States. **See Exhibit "D"— Report by Dr. Sherry.** He draws the conclusion that Andrey's older siblings were perhaps more stable in their lives and thus "less affected by the move," while "his

younger siblings were better able to fit more smoothly into American society." See **Exhibit "D"—Report by Dr. Sherry**.

Pursuant to U.S.S.G. §5K2.0, this situation is atypical and takes it out of the considered "heartland". Although the guidelines do not permit a downward departure based upon national origin, this matter more squarely fits within a category of "assimilation" into society and culture and thus falls outside the "heartland" of the guidelines.

In this case, as a result of the societal exclusion and difficulty with the English language Mr. Buynovskiy became very vulnerable. **See Exhibit "B"—Letters in Support.** This vulnerability left Mr. Buynovskiy prone to influences by individuals who "accepted" him and made him part of their crowd, most often those who spoke Russian also. In this matter, Alexei Safanov became one of those individuals who preyed on Mr. Buynovskiy's vulnerability and pressured him to engage in this type of conduct. Such a situation warrants a departure from the proposed guideline range pursuant to U.S.S.G. §5K2.0 and the Koon decision. 518 U.S. at 81.

### VI. PURSUANT TO U.S.S.G. §5H1.6 ANDREY BUYNOVSKIY SHOULD BE GRANTED A DOWNWARD DEPARTURE DUE TO THE PRESENCE OF HIS FAMILY TIES AND RESPONSIBILITIES

The First Circuit allows downward departure based on familial relationships when the circumstances are "unusual or other than ordinary." United States v. Scalmo, 997 F.2d 970, 973 (1st Cir. 1993) (noting that the presence of a live in boyfriend was so vital to the emotional well being of a child in the house that downward departure was warranted). In determining whether a departure is warranted under "family ties and responsibilities" the court can consider numerous factors, including: (1) the seriousness

of the offense; (2) involvement by other family members in the offense; and (3) the dangers to other family members of the Defendant as a result of the offense. See U.S.S.G. §5H1.6. Further, when a departure under this section is based upon a "loss of caretaking or financial support" a court must consider these additional factors: (1) whether serving the applicable sentence will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family; (2) whether the loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant; (3) whether the loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available; and (4) whether the departure will address the loss of caretaking or financial support. See U.S.S.G. §5H1.6.

In the following matter, Andrey Buynovskiy is the main "figurehead" in a family of twelve (12) now that his father has passed away. As you can see by the attached letters in support, Mr. Buynovskiy provides financial, emotional, and physical support to his family. **See Attached Exhibit "B"—Letters in Support.**

Yelena Buynovskaya, his mother, explains that since the death of Mr. Buynovskiy's father, and since her diagnosis with brain cancer, Andrey has been instrumental in the rearing of his younger siblings, providing financially for the family, and making necessary repairs to his family's home. **See Attached Exhibit "B"—Letters in Support.** His siblings also indicate this same type of "fatherly" presence that Mr. Buynovskiy exerts within their family. **See Attached Exhibit "B"—Letters in Support.** As you can tell, the letters from Mr. Buynovskiy's family and friends contain

common themes—hardworking, family oriented, caring, and resilient. **See Attached Exhibit "B"—Letters in Support.**

Most importantly, Mr. Buynovskiy has started his own business—Affordable Quality Insulation. Mr. Buynovskiy's business, which he owns with his brother Pavel, employs his siblings and provides a source of income and stability for his family. **See Presentence Report ¶ 93; See Attached Exhibit "B"—Letters in Support.** Mr. Buynovskiy's incarceration will greatly hinder the daily operations of Affordable Quality Insulation and thus provide a decreased source of income for his family. Since Mr. Buynovskiy's family already struggles financially, this set back will only cause more strain on his mother and siblings.

Based on the factors listed in U.S.S.G. §5H1.6 a downward departure is appropriate because the proposed sentence will have a direct affect on Mr. Buynovskiy's family financially, emotionally, and physically. Further, a downward departure would effectively remedy this loss of loss of caretaking or financial support by allowing Mr. Buynovskiy to regain the controls of his business in as short a time as possible.

V. **ALTERNATIVELY, MR. BUYNOVSKIY MAINTAINS THAT THE SENTENCING GUIDELINES HAVE BEEN MADE ADVISORY BY THE SUPREME COURT'S DECISION IN UNITED STATES V. BOOKER AND THIS COURT IS NOT OBLIGATED TO APPLY THE GUIDELINES RANGES AND MAY SENTENCE MR. BUYNOVSKIY BELOW THE RANGE AS IT SEES FIT.**

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court reaffirmed their holding in Apprendi v. New Jersey, 530 U.S. 466 (2000) and applied their holding in Blakley v. Washington, 124 S. Ct. 2531 (2004) to the federal sentencing guidelines. The Booker decision rendered the federal sentencing guidelines "advisory", but the "Breyer majority" held that the district court can still find facts at sentencing that increase

the guideline range beyond the facts found by the jury or admitted by the defendant, though subject to a "reasonableness" standard on review and still subject to the Apprendi limitations on increasing sentences beyond the statutory maximum. In this matter, the court is not bound to adhere to the guidelines for sentencing purposes and may chose to sentence Mr. Buynovskiy to how it sees fit.

In imposing sentence, a court must always consider the purposes of sentencing. Congress set forth those purposes in 18 U.S.C. § 3553(a). Under that provision a court should consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing ranges; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a).

In light of the above-mentioned factors, specifically but not limited to the sixth (6th) factor, this court should take into consideration his minimal participation in this activity; the struggle and oppression that Mr. Buynovskiy has undergone since his move from the Soviet Union; the reliance his family has on his presence for financial, emotional, and physical support; his lack of a criminal record and the likelihood that he will re-offend; and the absence of a statutory minimum mandatory thus allowing the court to sentence Mr. Buynovskiy as it sees fit.

## VI.  CONCLUSION

Based upon the Defendant's "minimal participation" in the concerted activity, the mitigating circumstances not adequately taken into consideration by the U.S.S.G., and his

13

Family Ties and Responsibilities the Defendant respectfully requests that this honorable court impose a sentence of ten (10) months. Such a period of incarceration is appropriate in light of the aforementioned factors in 18 U.S.C. § 3553(a).

Respectfully Submitted,<br>
Andrey Buynovskiy<br>
By His Attorney:

Joseph D. Bernard
The Law Offices of Joseph D. Bernard, P.C.
73 State Street, Suite 301
Springfield, MA 01103
(413) 731-9995
(413) 730-6647 fax

Date:   March 17, 2006          BBO#: 557986

---

### CERTIFICATE OF SERVICE

---

I, Joseph D. Bernard, hereby certify that a true copy of the foregoing Motion for Downward Departure and Memorandum in Support was served upon the United States Attorney's Office, Federal Building and Courthouse, 1550 Main Street, Springfield, MA by HAND DELIVERY on the date hereof.

Joseph D. Bernard
The Law Offices of Joseph D. Bernard, P.C.
73 State Street, Suite 301
Springfield, MA 01103
(413) 731-9995
(413) 730-6647 fax

Date:   March 17, 2006          BBO#:  557986